# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA
Case No.: 0:21-cv-01700 (ECT/KMM)

| | |
|---|---|
| Ali Dahir, *on behalf of himself and all others similarly situated*,<br><br>Plaintiff,<br><br>vs.<br><br>Cresco Capital, Inc. and Lone Mountain Truck Leasing, LLC,<br><br>Defendants. | **AMENDED CLASS ACTION COMPLAINT**<br><br><br>**JURY TRIAL DEMANDED** |

## AMENDED CLASS ACTION COMPLAINT

1.      Plaintiff Ali Dahir hereby amends his Complaint [ECF. 1-1] pursuant to Rule 15(a)(1)(B) of the Federal Rules of Civil Procedure.

2.      Plaintiff brings this class action against Defendants Cresco Capital, Inc. ("Cresco") and Lone Mountain Truck Leasing, LLC ("Lone Mountain") alleging violations the Minnesota Uniform Commercial Code (UCC) and the Minnesota Consumer Fraud Act ("MCFA").

## JURISDICTION AND VENUE

3.      This Court has jurisdiction pursuant to 28 U.S.C. §§ 1441, 1446, 1332, and 1332.  Venue is proper in this Judicial District because Defendants transact business in Minnesota, Cresco is a Minnesota registered entity, and the events or conduct giving rise to the cause of action occurred in Minnesota.

## PARTIES

4.      Plaintiff is a natural person and citizen of the State of Ohio.

5.      Defendant Cresco is a Minnesota corporation with its principal place of business located at 200 Owen Parkway Circle, Carter Lake, IA 51510. Registered Agents Inc. is the registered agent authorized to accept service on behalf of Cresco.

6.      Defendant Lone Mountain is a Nevada limited liability company with its principal place of business located at 200 Owen Parkway Circle, Carter Lake, IA 51510. Registered Agents Inc. is the registered agent authorized to accept service on behalf of Lone Mountain.

7.      Defendants have offices at 1256 Trapp Road, Eagan, Minnesota 55121.

8.      Defendants have offices at 3321 Mike Collins Dr., Suite A, Eagan, Minnesota 55121.

9.      For all intents and purposes, Lone Mountain is Cresco and Cresco is Lone Mountain.  Cresco and Lone Mountain have the same offices, owners, executives, officers, managers, email addresses, phone numbers, and many of the same employees.

10.      Upon information and belief, employees of Cresco and Lone Mountain are paid by the same entity.

11.      All employees of Defendants have Lone Mountain email addresses.

12.      At all times, Defendants communicated with Plaintiff through a Lone Mountain email address.

13.      Employees of Lone Mountain hold themselves out as employees for Cresco.

14.    Employees of Cresco hold themselves out as employees for Lone Mountain.

15.    Joe Hoovestol is President and CEO of Cresco.  Hoovestol is also the owner and managing member of Lone Mountain.

16.    The Minnesota location at Trapp Road is the office for Hoovestol. Defendants conduct business, through Hoovestol at the Eagan location.

17.    Defendants are organized and operated so that each entity is an instrumentality or alter ego of the other entity.

18.    All business and contacts that Defendants have with Minnesota is the business and contact of both Cresco and Lone Mountain.

## NATURE OF THE ACTION

**LEASE DISGUISED AS SECURITY AGREEMENT**

19.    Cresco is the in-house financing arm of Lone Mountain, which sells trucks to truck drivers all over the country.

20.    The aim of Defendants' business is to sell trucks to drivers under so-called "lease-to-own" agreements.

21.    Lone Mountain represents the following:

> Here at Lone Mountain, the price you see advertised is the price you will pay. You make the down payment, the monthly payments, and after that last payment we send you the title to your truck. There's no hidden fees, and no balloon payments at the end.

*See How it Works*, https://www.lonemountaintruck.com/truckleasing/ (Jun. 23, 2021, 12:30 pm); *see also* Lone Mountain Truck Leasing, *Lone Mountain Truck Leasing-How It Works*, YOUTUBE (May 14, 2015), https://youtu.be/bbFNmTUsHkI.

22.    Each time a person purchases a truck from Lone Mountain through the "lease-to-own" program, the financing is completed through Cresco.

23.    Lone Mountain is paid a fee for every lease agreement.

24.    Defendants use the same or similar form for each lease agreement.

25.    The agreements include a Master Equipment Lease Agreement, a Lease Schedule, a Purchase Obligation Rider, an Acceptance Certificate, and other addendums or schedules.

26.    Under every lease agreement from Defendants: (a) the monthly payments under the agreement is an obligation for the entire term of the lease; (b) the obligation under the lease is not subject to termination by the lessee; (c) the lessee is bound to become the owner of the truck; (d) the lessee becomes the owner of the truck for no additional consideration; and (e) the lessee is required to grant a security interest in the truck to secure payment under the lease agreement.

27.    The lease agreements are security agreements.

28.    Upon a truck driver's default, Defendants will repossess the driver's truck. Thereafter, Defendants will sell or lease the truck through its website, AlmostFreeTrucks.com.

29.     After Defendants sell or lease the truck, Defendants retains the proceeds. Defendants do not credit the lessee's account, whether by paying a surplus or reducing any deficiency balance.

30.     At all times relevant to this Complaint, Defendants had a policy of only allowing lessees to redeem their truck if the account balance was paid within ten days after the repossession.

31.     At all times relevant to this Complaint, Defendants did not have any policies or procedures in place of providing lessees with the proper notice of the date and time of any public sale of the truck.

## FACTUAL ALLEGATIONS
### (Experience of the Representative Plaintiff)

32.     In 2016, Plaintiff purchased a 2013 Kenworth Truck (the "Truck") from Lone Mountain.

33.     In connection with purchasing the Truck, Plaintiff entered into a Master Equipment Lease Agreement (the "Agreement") with Cresco.

34.     Lone Mountain was paid a fee for this Agreement.

35.     The Agreement included a Lease Schedule, an Acceptance Certificate, Equipment Schedule, a Purchase Obligation Rider, and other schedules and addendums.

36.     Under the terms of the Agreement: (a) Plaintiff obtained a loan from Defendants to finance the purchase of the Truck; (b) Plaintiff granted Defendants a security interest in the Truck to secure repayment of the loan; (c) Plaintiff was required to

make 44 regular monthly installment payments in the amount of $1,450; and (d) Plaintiff was required to pay a down payment of $5,500.

37.    Payments to Defendants are to be made via ACH transfers.

38.    The Agreement was a non-cancelable and non-terminable lease for the entire term of the lease.

39.    At the end of the lease term, Plaintiff was required to become the owner of the Truck for no additional consideration.

40.    The Agreement was executed by Jim Greer on behalf of Defendants.

41.    Both Jim Greer and Lone Mountain represent to the public that Jim Greer is an employee of Lone Mountain.

42.    The Agreement created a "security interest" under Minn. Stat. § 336.1-203(b) because it provides for: (a) Plaintiff to pay Defendants for the right to possession and use of the Truck: (b) the payment obligation is an obligation for the entire term of the lease; (c) the lease is not subject to termination by Plaintiff; (d) Plaintiff is bound to become the owner of the Truck; and (e) Plaintiff can become the owner of the Truck for no additional consideration.

43.    The Agreement is a "security agreement" under Minn. Stat. § 336.9-102(a)(74) because it provides for a security interest to Defendants. Therefore, Defendants is a "secured party" as defined under Minn. Stat. § 336.9-102(a)(73).

44.    Upon default under the Agreement, Defendants may accelerate the balance due and repossess the Truck. In addition, Defendants may sell or lease the truck and retain the profits.

45.     Defendants must provide notice to Plaintiff of any intended sale or lease of the Truck after repossession. Notice to Plaintiff must be sent to Plaintiff by mail.

**DEFENDANTS FAILED TO COMPLY WITH THE UCC**

46.     The total Acquisition Cost under the Agreement was $69,300, which included the 44 monthly installment payments and the $5,500 down payment.

47.     As of June 2020, Plaintiff paid $66,400 to Defendants, which included 42 of the 44 monthly payments (*i.e., $60,900*) and the $5,500 down payment.

48.     Defendants also charged $882.50 in additional fees, which included $100.00 fee to change the payment date, $275.00 in NSF fees, and $507.50 in late fees.

49.     As of June 2020, Plaintiff paid Defendants $590.00 towards the additional fees.

50.     In June 2020, Plaintiff was living in Minnesota.

51.     Defendants were aware that Plaintiff was located in Minnesota.

52.     In June 2020, Plaintiff's Truck was located in Minnesota.

53.     Sometime prior to June 25, 2020, Cresco and Lone Mountain contracted with a repossession entity in Minnesota to repossess Plaintiff's Truck in Minnesota.

54.     On June 25, 2020, Defendants repossessed the Truck for an alleged default of the Agreement.

55.     Defendants repossessed the Truck in Minnesota.  Thereafter, Defendants brought the truck to their location in Eagan, Minnesota – specifically, the Trapp Road address.

56.     On June 25, 2020, Defendants sent a letter to Plaintiff terminating the Agreement.

57.     Defendants accelerated the loan balance for the Truck and demanded payment in full.

58.     The June 25th letter further stated: (a) Defendants will sell or lease the Truck "within" 10 days following the notice; (b) Defendants will sell or lease the Truck at a private sale; and (c) Plaintiff is entitled to an accounting.

59.     After sending the June 25th letter, Defendants blocked Plaintiff's access to the online portal.

60.     On June 26, 2020, Defendants informed Plaintiff that: (a) he needed to pay off the Truck in full; and (b) that the alleged balance was approximately $6,000.

61.     Plaintiff did not owe Defendants $6,000 on June 26, 2020.

62.     Plaintiff requested an accounting from Defendants.

63.     On June 30, 2020, Defendants informed Plaintiff that: (a) he needed to pay $5,992.50 to redeem his Truck; and (b) that Plaintiff needed to pay the alleged balance in full by July 2, 2020.

64.     Plaintiff did not owe Defendants $5,992.50 on June 30, 2020.

65.     At all times, Plaintiff was willing, ready, and able to pay Defendants the valid balance owed (*i.e., between $3,192.50 - $3,992.50*). Because Defendants inflated the alleged balance by an extra $2,000, Plaintiff was forced to scramble to obtain emergency funds.

66.     But for Defendants' excessive demand, Plaintiff could have redeemed his Truck immediately.

67.     After the repossession, Defendants demanded payment by wire transfer only.

68.     The Agreement allows Plaintiff to pay Defendants via ACH transfers. There is nothing in the Agreement requiring Plaintiff to pay Defendants by wire transfer only.

69.     On July 2, 2020, Defendants emailed Plaintiff stating the following:

"I would need the wire today if you want to pay the truck off. Are you able to pay that? If not, it will go to wholesale and you can purchase it from the website when your funds are available."

70.     Plaintiff requested an accounting from Defendants on multiple occasions in order to verify the alleged balance owed.

71.     Defendants told Plaintiff to check his online customer portal to retrieve his transaction history.

72.     Because Defendants had blocked Plaintiff's access to the online portal, Plaintiff was unable to obtain his transaction history to verify the alleged balance owed.

73.     On July 7, 2020, Plaintiff told Defendants that he wanted to redeem the Truck.

74.     In response to Plaintiff's request, Defendants emailed Plaintiff the following:

"There is only a 10 day window before a lease is terminated. There is nothing I can do. If you're wanting the truck back, you simply have to wait for it to go to

auction on Almostfreetrucks.com and place a bid. Our system is automatic and it was stated in the letter that was sent to you."

75.    Defendants' statements concerning the online system were false, deceptive, and misleading. Defendants knew such statements were false at the time they were made. Defendants made those statements to induce Plaintiff to purchase the Truck back from Defendants.

76.    At all times, Plaintiff demanded that Defendants allow him to redeem his Truck. Defendants refused to allow Plaintiff to redeem his Truck.

77.    Plaintiff requested that Defendants provide him the wire instructions to redeem his Truck. Defendants never provided Plaintiff with wire instructions.

78.    On July 8, 2020, Defendants told Plaintiff that: (a) he could not redeem the Truck; (b) Plaintiff had until July 2nd to come up with the funds; (c) Plaintiff was required to pay in full within 10 days from the date of repossession; (d) the Truck will be sold through Defendants' website; (e) Plaintiff can purchase the truck through Defendants' website when it is listed; and (f) there is nothing Defendants can do to allow Plaintiff to redeem the Truck.

79.    On July 8, 2020, Defendants sent an email to Plaintiff that stated:

"As I told you before, you had until July 2nd to come up with the funds and you called in requesting 2 more weeks. You have 10 days from the date the truck was secured, and there are exceptions. As I have told you before, the truck will be wholesaled from Almostfreetrucks.com and you are more than welcome to bid on that site once it's listed."

80.    Defendants emailed Plaintiff a second time on July 8, 2020, that stated the following:

"Attached is the payment history. The 10 days landed on a holiday weekend, which is why I told you the 2nd. You requested 2 weeks, and then told me before that, you were "waiting on the funds." I'm not going to provide you with wire instructions when you simply couldn't make the 10 days' work. Unfortunately, there is nothing I can do to change that at this time. You were told to access the customer portal to retrieve your payment history, which is what we expect all lessee's to do."

81.    On July 2, 2020, Defendants disposed of the Truck by transferring the Truck to Cresco, Lone Mountain, or both Cresco and Lone Mountain.  Defendants divested Plaintiff of the interest in Truck by requiring Plaintiff to purchase the Truck at a subsequent final sale.

82.    Defendants never provided Plaintiff with an accounting of the alleged balance of $5,992.50.

83.    Defendants' statements concerning the alleged balance owed were false, deceptive, and misleading. Defendants knew such statements were false at the time they were made.  Defendants made those statements to induce Plaintiff to pay the inflated, excessive, and overstated balance.

84.    At all times after the repossession, Defendants insisted on charging Plaintiff wrongful, excessive, inflated, and overstated amounts in connection with the Agreement.

85.    Upon information and belief, Defendants charged customers a flat $2,000 fee upon default. Defendants charge the same fee to every customer who defaults on their agreement.

86.    There is nothing in Defendants' agreements that allow for a flat $2,000 fee.

87.    At all times Defendants repeatedly put pressure on Plaintiff to pay immediately.

88.    At all times Defendants threatened to sell the Truck if Plaintiff did not pay what Defendants were demanding by July 2, 2020.

89.    As a result of Defendants' conduct, Plaintiff was forced to hire an attorney.

90.    On July 9, 2020, Plaintiff, through his counsel, demanded Defendants release the Truck to Plaintiff and allow him to pay the alleged balance owed.

91.    Without any further discussion, on July 9, 2020, Defendants stated that it would release the Truck to Plaintiff for a total payment of $3,992.50.  Defendants provided the requisite the wire instructions to complete the payment.

92.    On or about July 9, 2020, Plaintiff purchased the Truck back from Defendants for a total of $3,992.50.

93.    Plaintiff paid by wire and was charged a $30.00 fee.

94.    After the purchase, Defendants sent Plaintiff a Bill of Sale and Title to the Truck.

95.    The Title and the Bill of Sale were sent by Lone Mountain.

96.    The Title and the Bill of Sale signed by Stephanie Taylor.

97.    The Title identified Cresco at a location in Eagan, MN.

98.    The Bill of Sale was signed by both Cresco and Lone Mountain.

99.    On July 9, 2020, Defendants sent Plaintiff a letter regarding his personal property in the Truck.  The letter was delivered via email.

100.    The July 9th letter stated, in relevant part:

Enclosed is a copy of the inventory of personal items that were left in the truck that you were leasing from Lone Mountain.

This will serve as notification that we will hold your personal property for 30 days from the date of this letter. If arrangements have not been made by this date, we will dispose of the property.

Lone Mountain Truck Leasing DOES NOT package and ship personal property; the property must be personally checked and signed for.

If you would like to schedule a time to retrieve your personal belongings, please call 866-512-5685 x2278.

101.    The letter was on Cresco letterhead.

102.    The 866 number is the phone number for Lone Mountain.

103.    Anytime Plaintiff placed a phone call to Defendants, the automated message stated: "Thank you for calling Lone Mountain Truck Leasing and Cresco Capital".

104.    At all times, Defendants represent to Plaintiff that was communicating with Lone Mountain.

105.    Lone Mountain represented to Plaintiff that he was leasing the Truck through Lone Mountain.

106.    At all times, Defendants made no discernable difference between the actions and conduct of Lone Mountain or the actions and conduct of Cresco.

107.    Upon notice that Plaintiff was represented by an attorney, Defendants immediately reversed its position.    Because Defendants were not able to mislead an attorney nor violate the law with an attorney, Defendants attempted to mitigate its illegal behavior.

108.    After Plaintiff retained a lawyer, Defendants' automatic system miraculously reversed the terminated lease.

109.    After Plaintiff retained a lawyer, the alleged balance owed miraculously decreased by $2,000.

110.    Contrary to Defendants' June 25th letter, Defendants did not intend to dispose of the Truck via private sale. Instead, Defendants intended to sell the Truck during a public sale through its website.

111.    Defendants violated section 9-613 of the UCC because: (a) it did not provide Plaintiff with the date and time of the public sale; and (b) it misrepresented the method of disposition.

112.    Defendants violated section 9-210 of the UCC because it did not provide Plaintiff with an accounting of unpaid obligations secured by collateral and reasonably identifying the transaction or relationship that is the subject of the request.

113.    Defendants violated section 9-623 of the UCC because Plaintiff is allowed to redeem his Truck at any time prior to the sale of the Truck.

114.    Defendants violated section 9-610 of the UCC because it wrongfully disposed of the Truck by transferring all of Plaintiff's interest in the Truck to itself.

115.    Defendants' notice before disposition violated section 9-611 of the UCC because it misstated the amount owed, the method of sale, and the date and time of any public sale.  Therefore, the notice before disposition is defective.

**DAMAGE, HARM, AND INJURIES TO PLAINTIFF**

116.    Plaintiff has suffered actual damages, tangible injuries, and intangible injuries as a result of Defendants' conduct.

117.    As outlined above, Defendants' efforts to enforce a security interest were objectively unfair, harassing, abusive, oppressive, and unconscionable.

118.    Defendants' conduct caused Plaintiff to incur out of pocket monetary damages.

119.    Defendants' conduct caused Plaintiff emotional distress, aggravation, anger, confusion, anxiety, nuisance, fear, humiliation, inconvenience, embarrassment, and annoyance.

120.    Defendants caused an intrusion upon and occupation of Plaintiff's property. Likewise, Defendants' conduct interfered with and interrupted Plaintiff's use and enjoyment of his personal property.

121.    All of Plaintiff's above-referenced injuries – both tangible and intangible – are actual, concrete injuries that are widely recognized by the United States Supreme Court, United States Court of Appeals for the Eighth Circuit, United States District Court for the District of Minnesota, and District Courts for the State of Minnesota.

## CLASS ACTION ALLEGATIONS

122.    Plaintiff brings this action on behalf of himself and on behalf of all other persons similarly situated, and seeks to certify the following Classes:

a.  Notice Class

*All lessees whose trucks were repossessed by or on behalf of Defendants, within four (4) years of the filing of the Complaint, and who were sent a notice before disposition which failed to contain one or more of the required mandatory disclosures in § 9-613.*

b.  Accounting Class

*All lessees who made a request for an accounting from Defendants, within four (4) years of the filing of the Complaint, and who were not sent a record from Defendants identifying the unpaid obligations.*

c. Fee Class

*All lessees whose trucks were repossessed by or on behalf of Defendants, within four (4) years of the filing of the Complaint, and who were charged a $2,000 fee.*

123.   The Notice Class, Accounting Class, and the Fee Class (collectively the "Classes" or "Class") shall be subject to the following exclusions, who are not members of the Classes, notwithstanding eligibility according to the above criteria: all (1) Counsel for Plaintiff and the Classes; (2) Counsel for Defendants; (3) any assigned judge, and their clerks and staff;  and (4) lessees whose account balances with Defendants were discharged in bankruptcy prior to the repossession.

124.   During the class time-periods alleged herein, Defendants did not have a policy and procedure in place of sending proper legal notices to Plaintiff and the Classes.

125.   Based upon established policy and practice, Defendants: (a) regularly sent notices before disposition that failed to comply with the UCC; (b) regularly failed to provide an accounting to customers; (c) regularly charged an excessive $2,000 fee; (d) regularly failed to allow customers to redeem their truck; and (e) regularly sold the truck at a public sale.

126.   This action has been brought as a class action pursuant to Rule 23 of the Rules of Civil Procedure because the Classes satisfy the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements under Fed. R. Civ. P. 23(a) and (b).

**Rule 23(a)(1) - Numerosity**

127.   Defendants has at least five locations in the United States and offers auto loans in all 50 states. Defendants boast that they have signed over 6,473 titles to truck drivers across the country. In addition, Defendants' informational YouTube video has been viewed over 13,000 times.

128.   Defendants provides financing to a large number of truck drivers or lessees to purchase trucks. Of these lessees, many have defaulted and have had their trucks repossessed by Defendants. Defendants repeatedly failed to notify the Classes of the date and time of any public sale, failed to allow the Classes to redeem their truck, failed to provide reasonable notification before disposition, charged excess fees, and failed to provide an accounting.

129.   The exact number of the class members is unknown at this time, but upon information and reasonable belief, the estimated number is in excess of 100 truck drivers. Thus, it is plausible that Defendants failed to comply with the UCC on such a large number of truck drivers that joinder of all in this lawsuit would be impracticable.

130.   The exact number of class members as well as the identities of all class members are readily ascertainable through appropriate discovery, including, but not limited to, the business records of Defendants and the online accounts from Defendants' website or internal software.

**Rule 23(a)(2) - Commonality**

131.    Common questions of law and fact that exist as to Classes, including:

    a.  Whether Defendants failed to provide the class members with the dates and times of any public sale of the truck;

    b.  Whether Defendants failed to allow the class members to redeem their trucks at any time prior to the disposition of said class members' trucks;

    c.  Whether Defendants wrongfully charged class members a $2,000 fee; and

    d.  Whether Defendants failed to provide the class members with an accounting.

132.    The common evidence that will drive resolution of the claims for the Classes is a list of customers: (a) who were sent a notice which failed to contain one or more of the required mandatory disclosures in § 9-613; (b) who were given ten days or less to redeem their truck; (c) who were charged a $2,000 fee; and/or (d) who were not provided with an accounting.

**Rule 23(a)(3) - Typicality**

133.    Plaintiff's claims are typical of the claims of all the other members of the Classes because Plaintiff has the same claims to relief and has suffered the same injuries as all other class members. Likewise, Plaintiff's claims are based on the same legal theories as the claims of all the other members of the Classes.

134.    The claims of Plaintiff and the Classes originate from the same conduct, practice, and procedure on the part of Defendants. Thus, the claims of each class member require proof of the same operative facts. Any defenses that Defendants may have to

liability or quantum of damages with respect to Plaintiff's claims would be generally applicable to all members of the Classes.

**Rule 23(a)(4) – Adequacy**

135.    Plaintiff brings this lawsuit after an extensive investigation of Defendants' alleged misconduct, with the intention to stop Defendants' unlawful practices, and to recover the same relief for all persons affected.

136.    Because Plaintiff has no interest adverse to, or in conflict with, the interests of the Classes, Plaintiff will fairly and adequately protect the interests of all class members.

137.    Plaintiff's counsel, Adam R. Strauss of Tarshish Cody, PLC and Thomas J. Lyons, Jr. of Consumer Justice Center, P.A. practice exclusively in consumer protection with an emphasis on litigation concerning wrongful repossession matters under the Minnesota UCC. Plaintiff's counsel has been certified as class counsel in class actions which sought to enforce plaintiffs' rights under the UCC.

138.    Neither Plaintiff nor his counsel have any interest which might cause them to not vigorously pursue the instant class action lawsuit. Plaintiff and his counsel are committed to expending the time, energy, and resources necessary to successfully prosecute this action on behalf of the Classes.

**Rule 23(b)(3) – Predominance/Superiority**

139.    A class action is appropriate because questions of law and fact common to Plaintiff and the Classes substantially predominate over questions that may affect individual class members. Because all members of the Classes had their rights violated in

the same manner by the same actions of Defendants, the answer to these common questions will advance the adjudication or resolution of the litigation as to all class members.

140.   A class action is superior to all other available methods for the fair and efficient adjudication of the controversies raised in this Complaint because the costs to pursue individual claims would likely exceed what any one class member has at stake. Thus, members of the Classes have little interest in controlling separate actions when considering the cost, risk, delay, and uncertainty of recovery in prosecuting these claims.

141.   The concentration of litigation of these claims in one forum will permit a large number of similarly situated persons to prosecute their common claims efficiently, without unnecessary duplication of effort and expense that individual actions would engender, and therefore, promote judicial economy.

142.   Relief under the UCC follows from evidence that Defendants charged a $2,000 fee, failed to notify the Classes of the date and time of any public sale, failed to allow the Classes to redeem their truck, failed to provide the Classes with an accounting—not the subjective or individual experience of any class member.

143.   Whether Defendants violated the law can be determined by examination of Defendants' policies and conduct, as well as a ministerial inspection of Defendants' business records.

144.   Upon information and belief, few members of the Classes are aware that Defendants' actions were unlawful. Thus, the class notice mechanism provides an

opportunity for uninformed members of the Classes to learn about their rights and obtain relief where they otherwise would not have.

145.    Plaintiff and his counsel are not aware of any other pending class actions against Defendants related to their regular practice of failure to comply with the UCC.

146.    A class action is appropriate because the prosecution of separate actions for individual class members creates a risk of inconsistent or varying adjudications which could establish incompatible standards of conduct for the parties engaged in the provision of enforcing security agreements. Likewise, the prosecution of separate actions by individual class members would, as a practical matter, be dispositive of the interests of other members who are not parties to the action or could substantially impair or impede their ability to protect their interests.

## COUNT I
## VIOLATIONS OF THE MINN. STAT. § 336.9-610
### (ALL DEFENDANTS)

147.    Plaintiff restates and re-alleges the preceding allegations of this Complaint.

148.    Plaintiff brings Count I as a Class Action on behalf of himself and the Classes.

149.    Under the UCC, "[e]very aspect of a disposition of collateral, including the method, manner, time, place, and other terms, must be commercially reasonable." Minn. Stat. § 336.9-610.

150.    A secured party may purchase the collateral at a public disposition or at a private disposition if the collateral is customarily sold on a recognized market. Minn. Stat. § 336.9-610.

151.    The sale, lease, or auction of a motor vehicle is not a recognized market.

152.    A disposition upon default is intended to refer to a transfer of some portion of the creditor's interest in the collateral and a transfer of the debtor's interest. *See Bremer Bank, Nat'l Ass'n v. Matejcek*, 916 N.W.2d 688, 694 (Minn. App. 2018) (citing *Fodale v. Waste Mgmt. of Mich., Inc.*, 718 N.W.2d 827, 835 (2006)).

153.    On or about July 2, 2020, Defendants transferred all of the rights, title, and interest in the Truck to itself. This transfer did not occur at a public sale, but rather a private transaction.

154.    On or about July 2, 2020, Defendants otherwise disposed of the Truck transferring all of Plaintiff's interest in the Truck, including preventing Plaintiff from redeeming the Truck and demanding that Plaintiff purchase the Truck at a public auction.

155.    Defendants' conduct violated Minn. Stat. § 336.9-610 because it wrongfully disposed of the Truck to itself.

156.    Defendants' conduct violated Minn. Stat. § 336.9-610 because it is not commercially reasonable to demand payment in excess of the alleged balance owed.

157.    As a result of Defendants' violations of Minn. Stat. §§ 336.9-610, Plaintiff and the Classes have been damaged in an amount to be determined at trial.

## COUNT II
## VIOLATIONS OF THE MINN. STAT. § 336.9-613

158.    Plaintiff restates and re-alleges the preceding allegations of this Complaint.

159.    Plaintiff brings Count II as a Class Action on behalf of himself and the Notice Class.

160.    Under the UCC, a notification before disposition of collateral must: (a) state the method of intended disposition; and (b) state the time and place of a public disposition. Minn. Stat. § 336.9-613.

161.    The notification before disposition must identify both the date and the hour of the day of any intended disposition.

162.    Defendants violated section 9-613 of the UCC because: (a) it did not provide Plaintiff and the Notice Class with the date and time of the public sale; and (b) it misrepresented the method of disposition.

163.    Defendants' notice before disposition is seriously misleading because it mispresents to Plaintiff and the Notice Class that it intends to dispose of collateral through a private sale.

164.    As a result of Defendants' violations of the UCC, Plaintiff and the Notice Class have been damaged in an amount to be determined at trial.

## COUNT III
## VIOLATIONS OF THE MINN. STAT. § 336.9-210

165.    Plaintiff restates and re-alleges the preceding allegations of this Complaint.

166.    Plaintiff brings Count III as a Class Action on behalf of himself and the Accounting Class.

167.    Under the UCC, upon request for an accounting a secured party must provide a record identifying the obligations in reasonable detail.

168.    A reasonably detailed accounting should include financial details such as: (1) the amount borrowed by the consumer and secured by the collateral for repayment;

(2) the amounts paid by the consumer towards the secured debt; (3) the identification of any defaulted payments, and (4) any additional charges incurred by the secured creditor.

169.   Defendants violated Minn. Stat. § 336.9-210 because it did not provide Plaintiff and the Classes with an accounting of unpaid obligations secured by collateral and reasonably identifying the transaction or relationship that is the subject of the request.

170.   As a result of Defendants' violations of the UCC, Plaintiff and the Accounting Class have been damaged in an amount to be determined at trial.

171.   As a result of Defendants' violations of section 9-210 of the UCC, Plaintiff and the Accounting Class are entitled to statutory damages of $500.

**COUNT IV**
**VIOLATIONS OF MINN. STAT. § 336.9-623**

172.   Plaintiff restates and re-alleges the preceding allegations of this Complaint.

173.   Plaintiff brings Count IV as a Class Action on behalf of himself and the Classes.

174.   Under the UCC, a person may redeem their collateral at any time before a secured party disposes of the collateral. Minn. Stat. § 336.9-623.

175.   Defendants violated section 9-623 of the UCC because it refused to allow Plaintiff and Classes to redeem their trucks at any time prior to the sale of their trucks.

176.   As a result of Defendants' violations of section 9-623, Plaintiff and the Classes have been damaged in an amount to be determined at trial.

**COUNT V**
**VIOLATIONS OF THE MINNESOTA CONSUMER FRAUD ACT**

177.   Plaintiff restates and re-alleges the preceding allegations of this Complaint.

178.    Plaintiff brings Count V as a Class Action on behalf of himself and the Classes.

179.    The MCFA prohibits "[t]he act, use, or employment by any person of any fraud, false pretense, false promise, misrepresentation, misleading statement or deceptive practice, with the intent that others rely thereon in connection with the sale of any merchandise, whether or not any person has in fact been misled, deceived, or damaged thereby." Minn. Stat. § 325F.69(1).

180.    Defendants, Plaintiff, and members of the Classes are all "persons" within the meaning of the MCFA.

181.    The lease agreements are "merchandise" within the meaning of the MCFA.

182.    Defendants charged Plaintiff and the Classes a $2,000 fee upon default.

183.    Defendants misrepresented to Plaintiff and the Classes that they needed to pay a $2,000 administrative fee.

184.    Defendants misrepresented to Plaintiff and the Classes the alleged balance owed on their accounts by including the additional $2,000 administrative fee.

185.    Defendants' statements concerning the alleged balance owed and/or the $2,000 fee were false, deceptive, and misleading. Defendants knew such statements were false at the time they were made. Defendants made those statements to induce Plaintiff and the Classes to pay the inflated, excessive, and overstated balance.

186.    At all times after the repossession, Defendants insisted on charging Plaintiff and the Classes wrongful, excessive, inflated, and overstated amounts in connection with the Agreement.

187.    The misrepresentations and deceptive practices of Defendants are harmful to the public such that there is a public interest in preventing Defendants from making such misrepresentations and utilizing such deceptive practices to induce people to pay excessive amounts.

188.    Defendants' unlawful actions were willful and intentional violations of the rights of Plaintiff and the Classes.

189.    Pursuant to Minn. Stat. § 8.31, subds. 1, 3a, Plaintiff and the Classes are entitled to an award of all such damages against Defendants, together with costs and disbursements, including costs of investigation and reasonable attorneys' fees.

190.    Plaintiff and the Classes further seek any other equitable or injunctive relief the court may deem just and proper pursuant to the provisions of Minn. Stat. § 8.31, subd. 3 to prevent Defendants from committing similar unlawful acts in the future victimizing other persons.

## COUNT VI
## WRONGFUL ACCELERATION

191.    Plaintiff restates and re-alleges the preceding allegations of this Complaint.

192.    Plaintiff brings Count VI as a Class Action on behalf of himself and the Classes.

193.    Under the UCC, before any disposition, a secured party must send a "reasonable authenticated notification of disposition."  *See* Minn. Stat. § 336.9-611. "The notification must be reasonable as to . . . its content", meaning compliance with section "9-613 (contents of notification generally)".  *See* Minn. Stat. § 9-611, cmt. 2.

194.    A notice that misstates the amount owed, the method of sale, and the date and time of any public sale is defective.  *See Travis v. Boulevard Bank NA*, 880 F. Supp. 1226, 1234 (N.D. Ill. 1995).

195.    Subsequent written demands for an excessive amount coupled with the notification before disposition amount to a defective notice.  *See id.*

196.    Defendants charged Plaintiff and the Classes a $2,000 fee upon default.

197.    Defendants misrepresented to Plaintiff and the Classes that they needed to pay a $2,000 administrative fee.

198.    Defendants misrepresented to Plaintiff and the Classes the alleged balance owed on their accounts by including the additional $2,000 administrative fee.

199.     Defendants' statements concerning the alleged balance owed and/or the $2,000 fee were false, deceptive, and misleading. Defendants knew such statements were false at the time they were made.  Defendants made those statements to induce Plaintiff and the Classes to pay the inflated, excessive, and overstated balance.

200.    At all times after the repossession, Defendants insisted on charging Plaintiff and the Classes wrongful, excessive, inflated, and overstated amounts in connection with the Agreement.

201.    Defendants' notice before disposition violated the UCC because it misstated the amount owed, the method of sale, and the date and time of any public sale. Therefore, the notice before disposition is defective.

202.    Because Defendants charged Plaintiff and the Classes an amount in excess of any balance owed, the acceleration of the loan balance was unlawful.

203.    Because Defendants' notice before disposition was defective, Defendants was not able to accelerate the balance of the loans for Plaintiff and the Classes.

204.    As a result of Defendants' violations of the UCC and wrongful acceleration, Plaintiff and the Classes have been damaged in an amount to be determined at trial.

## JURY DEMAND

205.    Plaintiff demands trial by jury.

**WHEREFORE**, Plaintiff Ali Dahir demands a trial by jury and prays for judgment against Defendants Cresco Capital, Inc. and Lone Mountain Truck Leasing, LLC as follows:

1. Awarding judgment against Defendants in an amount to be determined at trial;

2. Certifying the Notice Class, the Accounting Class, and the Fee Class;

3. Approving Plaintiff as the class representative for the Notice Class, the Accounting Class, and the Fee Class;

4. Approving Adam R. Strauss and Thomas J. Lyons, Jr. as Class Counsel for Notice Class, the Accounting Class, and the Fee Class;

5. Awarding Plaintiff, the Notice Class, the Accounting Class, and the Fee Class damages against Defendants, including statutory damages under Minn. Stat. § 336.9-625(f);

6. Awarding Plaintiff and the Classes  damages, costs, and attorney's fees, including costs of investigation, for Defendants' violation of Minn. Stat. §325F.69 *et seq*. and pursuant to Minn. Stat. § 8.31;

7. Awarding any other equitable or injunctive relief the court may deem just and proper pursuant to the provisions of Minn. Stat. § 8.31, subd. 3 to prevent Defendants from committing similar unlawful acts in the future which would victimize other persons;

8. Awarding Plaintiff, the Notice Class, the Accounting Class, and the Fee Class any costs, litigation expenses, disbursements, and allowable attorneys' fees; and

9. Awarding Plaintiff, the Notice Class, the Accounting Class, and the Fee Class such other and further relief as the Court deems proper, just, and equitable.

**TARSHISH CODY, PLC**

Dated:  October 5, 2021                By:    s/ Adam R. Strauss
                                              Adam R. Strauss (#0390942)
                                              ars@attorneysinmn.com
                                              Benjamin W. Tarshish (#0392691)
                                              btarshish@attorneysinmn.com
                                              6337 Penn Avenue South
                                              Minneapolis, Minnesota 55423
                                              Telephone: (952) 361-5556
                                              Facsimile: (952) 361-5559
                                              **ATTORNEYS FOR PLAINTIFF**