UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

Ali Dahir, *on behalf of himself and all others similarly situated*,

      Plaintiff,

v.

Cresco Capital, Inc., and Lone Mountain Truck Leasing, LLC,

      Defendants.

File No. 21-cv-1700 (ECT/BRT)

**OPINION AND ORDER**

---

Adam R. Strauss and Benjamin William Tarshish, Tarshish Cody, PLC, Minneapolis, MN; and Thomas J. Lyons, Jr., Consumer Justice Center P.A., Vadnais Heights, MN, on behalf of Plaintiff Ali Dahir.

R. Henry Pfutzenreuter, Larkin Hoffman Daly & Lindgren Ltd., Minneapolis, MN, on behalf of Defendants Cresco Capital and Lone Mountain Truck Leasing.

---

In this putative class action brought originally in Hennepin County District Court, Plaintiff Ali Dahir alleges that Defendants Cresco Capital and Lone Mountain Truck Leasing violated Minnesota's Uniform Commercial Code and Consumer Fraud Act in connection with their repossession of a commercial truck Dahir had purchased from them. Defendants removed the case here, invoking subject-matter jurisdiction under the Class Action Fairness Act ( "CAFA") and then filed a motion to dismiss the suit under Federal Rule of Civil Procedure 12(b)(6).

In the course of adjudicating Defendants' Rule 12(b)(6) motion, questions surfaced regarding whether the case meets CAFA's $5 million amount-in-controversy jurisdictional

threshold, and the Parties were given the opportunity to file supplemental briefs addressing this question.  After reviewing those submissions and other materials, I conclude that the case must be remanded to Hennepin County District Court because Defendants have not met their burden to allege facts plausibly showing that Dahir's original Complaint gives rise to an amount in controversy above CAFA's $5 million jurisdictional threshold.

I[1]

*Defendants sell commercial trucks.*  Lone Mountain "sells trucks to truck drivers all over the country."  Compl. [ECF No. 1-1] ¶ 15; Am. Compl. [ECF No. 12] ¶ 19.  These sales occur "under so-called 'lease-to-own' arrangements."  Compl. ¶ 16; Am. Compl. ¶ 20.  "Each time a person purchases a truck from Lone Mountain through the 'lease-to-

---

[1]      The facts that inform or are relevant to the CAFA-jurisdiction issue come from essentially five sources: (1) Defendants' Notice of Removal, ECF No. 1; (2) Dahir's original Complaint, ECF No. 1-1; (3) Dahir's Amended Complaint, ECF No. 12; (4) documents identified or referenced in the Complaint and Amended Complaint that, though not physically attached to either pleading, were filed by Defendants in support of their Rule 12(b)(6) motion, ECF No. 22; and (5) documents submitted with Defendants' Additional Brief Regarding Jurisdiction, ECF No. 35.  It seems appropriate to consider facts drawn from each of these sources.  Defendants accepted the truth of Dahir's damages allegations in removing the case and the truth of Dahir's liability allegations in seeking Rule 12(b)(6) dismissal.  In other words, for the limited purpose of assessing CAFA jurisdiction, the allegations in Dahir's pleadings are not challenged, and their truth will be accepted.  In line with Eighth Circuit precedent, Dahir hasn't disputed the propriety of considering the documents referenced in his pleadings that Defendants filed.  *See, e.g.*, *Zean v. Fairview Health Servs.*, 858 F.3d 520, 526 (8th Cir. 2017).  It is true that Defendants submitted evidence from outside Dahir's pleadings in their Notice of Removal and in the documents submitted with their supplemental brief.  *See* Notice of Removal ¶ 14 (alleging amount in controversy in an assertedly "similar" case); ECF No. 35 (attaching copies of Dahir's emailed settlement demand in this case and Complaint from assertedly similar case).  Defendants submitted these documents not to dispute any allegation in Dahir's pleadings but to bolster their interpretation of Dahir's amount-in-controversy allegations.  Regardless, it is appropriate to consider extra-pleading evidence when resolving a jurisdictional question.  *Osborn v. United States*, 918 F.2d 724, 729 n.6 (8th Cir. 1990).

own' program, the financing is completed through Cresco." Compl. ¶ 18; Am. Compl.

¶ 22. Lone Mountain is a limited liability company that maintains its principal place of

business in Carter Lake, Iowa.[2] Compl. ¶ 5; Am. Compl. ¶ 6. Cresco is incorporated under

Minnesota law and also maintains its principal place of business in Carter Lake, Iowa (at

the same address as Lone Mountain). Compl. ¶ 4; Am. Compl. ¶ 5.

*Dahir purchased a truck from Lone Mountain.* Dahir is an Ohio citizen. Compl.

¶ 3; Am. Compl. ¶ 4. In 2016, Dahir purchased a truck from Lone Mountain for a total

cost of $69,300. Compl. ¶ 28; Am. Compl. ¶¶ 32, 46. The agreements Dahir signed in

connection with this purchase required Dahir to make a down payment of $5,500 and

"make 44 regular monthly installment payments in the amount of $1,450." Compl. ¶ 31;

Am. Compl. ¶ 36. If Dahir defaulted, Defendants could accelerate the balance due and

repossess the truck, among other remedies. Compl. ¶ 39; Am. Compl. ¶ 44.

*Dahir defaulted on his payment obligation, and the truck was repossessed.* "As of

June 2020, Plaintiff paid $66,400 to Defendants, which included 42 of the 44 monthly

payments (*i.e., $60,900*) and the $5,500 down payment." Am. Compl. ¶ 47.[3] In addition

to his monthly payments, Dahir paid Defendants $590.00 toward $882.50 in additional fees

during this time that included a "$100 fee to change the payment date, $275.00 in NSF

---

[2]   For reasons that will become clear, Lone Mountain's citizenship doesn't matter to the CAFA jurisdiction issue. Therefore, the fact that we don't know the citizenship of its members isn't a problem. *See E3 Biofuels, LLC v. Biothane, LLC*, 781 F.3d 972, 975 (8th Cir. 2015).

[3]   In places, Dahir's Amended Complaint alleges details not in his original Complaint. Though not relevant to the jurisdictional question, *see St. Paul Mercury Indemnity Co. v. Red Cab Co.*, 303 U.S. 283, 292 (1938), these details provide helpful background.

fees, and $507.50 in late fees." *Id.* ¶¶ 48–49.  Though Dahir doesn't say so explicitly, he admits having a "valid balance owed" for the truck that was between $3,192.50 and $3,992.50, presumably in June 2020.  *Id.* ¶ 65.  Because of an "alleged default," Defendants repossessed the truck on June 25, 2020.  *Id.* ¶ 54.  The repossession occurred in Minnesota. *Id.* ¶¶ 53, 55.

*Defendants terminated Dahir's agreement.*   Defendants notified Dahir of their decision to terminate the agreement in a letter dated June 25, 2020.  *Id.* ¶ 56; *see* ECF No. 22-1 at 17.  The letter notified Dahir of his obligations to "pay all remaining balances on the Lease, including fees and additional expenses incurred by Cresco in the termination of the Lease."  ECF No. 22-1 at 17.  The letter notified Dahir that the truck would be sold or leased "privately . . . within 10 days following this notice."  *Id.*  The letter also notified Dahir that he was "entitled to an accounting of the unpaid indebtedness" and that he could "request an accounting of [his] lease balance from [his] account manager."  *Id.*

*Dahir and Defendants communicated regarding Dahir's balance and ability to redeem the truck.*  "On June 26, 2020, Defendants informed [Dahir] that: (a) he needed to pay off the [t]ruck in full; and (b) that the alleged balance was approximately $6,000." Compl. ¶ 45; Am. Compl. ¶ 60.  After Dahir requested an accounting, Defendants informed Dahir on June 30 that "he needed to pay $5,992.50 to redeem" the truck and that this amount was due "in full by July 2, 2020."  Compl. ¶ 48; Am. Compl. ¶ 63.  Defendants "blocked" Dahir from accessing "his online customer portal" to "verify the alleged balance owed."  Compl. ¶¶ 54–55; Am. Compl. ¶¶ 71–72.  "On July 7, 2020, [Dahir] told Defendants that he wanted to redeem the [t]ruck."  Am. Compl. ¶ 73.  In response,

4

Defendants represented to Dahir that, if he wanted the truck back, he would have to "wait for it to go to auction" on Defendants' online system and bid for it there. *Id.* ¶ 74.

*Dahir retained counsel, and his counsel and Defendants communicated regarding Dahir's balance and ability to redeem the truck.* On July 9, Dahir's counsel demanded that Defendants return the truck to Dahir and "allow him to pay the alleged balance owed." *Id.* ¶ 90. In response to counsel's demand, things changed. Defendants represented that Dahir's outstanding balance was $3,992.50 (or $2,000 less than what Defendants represented to Dahir before he retained counsel), and "Defendants provided the requisite [] wire instructions to complete the payment." *Id.* ¶ 91. Dahir purchased the truck back from Defendants on July 9 for $3,992.50. *Id.* ¶ 92. Dahir paid this amount "by wire and was charged a $30.00 fee." *Id.* ¶ 93. Dahir owns the truck free of any obligations to Defendants. *See id.* ¶ 94; *see also* Compl. ¶¶ 65–68, 74; ECF No. 22-1 at 19–20 (certificate of title dated July 10, 2020).

*Dahir brought this lawsuit in Hennepin County District Court.* Dahir "perfected service" of his original Complaint on Defendants on July 15, 2021. Notice of Removal [ECF No. 1] ¶ 4. In his original Complaint, Dahir asserted four theories of recovery in four separate counts, all arising under Minnesota's Uniform Commercial Code ("UCC"). In Count I, Dahir alleged that Defendants failed to engage in commercially reasonable dispositions of collateral, including with respect to Dahir's truck. Compl. ¶¶ 112–20. In Count II, Dahir alleged that Defendants failed to provide UCC-compliant notices of collateral dispositions, including with respect to Dahir's truck. *Id.* ¶¶ 121–26. In Count III, Dahir alleged that Defendants' lease-to-own agreements violated the UCC by not

requiring Defendants to "pay any lessee a surplus after disposition" and by including "an additional $2,000 fee." *Id.* ¶¶ 127–32. And in Count IV, Dahir alleged that Defendants violated the UCC "because they refused to allow [Dahir] and [would-be class members] to redeem their trucks at any time prior to the sale of their trucks." *Id.* ¶¶ 133–38. Dahir concluded each Count in his original Complaint with the following damages allegation: "Plaintiff and the Classes have suffered damages in an amount to be proved at trial but reasonably believed to be in excess of $50,000." *Id.* ¶¶ 120, 126, 132, 138. And in his prayer for relief, Dahir sought actual and statutory damages for himself and class members, along with attorneys' fees and costs. *Id.* at 20, ¶¶ 3–5.

*Defendants removed the case here and moved to dismiss Dahir's original Complaint under Rule 12(b)(6).* Defendants filed their Notice of Removal on July 26, 2021. *See* ECF No. 1. Defendants invoked subject-matter jurisdiction under CAFA, alleging the presence of minimal diversity, a putative class with more than 100 members, and an amount in controversy of greater than $5 million. *Id.* ¶¶ 6–16. With respect to the amount in controversy, Defendants asserted that "the total amount of actual and statutory damages, attorneys' fees, and other monetary relief at issue in this action, on an aggregate, class-wide basis, would exceed CAFA's $5 million jurisdictional minimum." *Id.* ¶ 12. In support of this assertion, Defendants wrote:

> Plaintiff alleges he "was required to make 44 regular monthly installment payments in the amount of $1,450" and "was required to pay a down payment of $5,500," which totals $69,300. (Ex. A, Compl. ¶ 31.) Plaintiff further alleges, "Upon a truck driver's default, Defendants will repossess the driver's truck. Thereafter, Defendants will sell or lease the truck through its website, AlomstFreeTrucks.com [sic] . . . [.]

> After Defendants sell or lease the truck, Defendants retain the proceeds. Defendants do not credit the lessee's account, whether by paying a surplus or reducing any deficiency balance." (*Id.* ¶¶ 24–25.) Plaintiff also alleges that "Defendants wrongfully retained proceeds from sale of class members' trucks" and "Defendants wrongfully charged class members a $2,000 fee." (*Id.* ¶¶ [sic] 96.) Finally, Plaintiff alleges, and has separately demanded, in excess of $50,000 in damages for his individual claims. (*Id.* ¶¶ 120, 126, 132, 138.)

*Id.* ¶ 13. Defendants then characterized another case filed against Defendants as "similar" and noted that the plaintiff in that case would "fall[] within the definitions of [Dahir's] putative classes" and sought damages for himself of more than $50,000. *Id.* ¶ 14. After removal, Defendants filed a motion to dismiss Dahir's original Complaint. ECF No. 6.

*Dahir filed his Amended Complaint, and Defendants moved to dismiss the Amended Complaint.* Dahir filed his Amended Complaint in compliance with Rule 15(a)(1)(B). *See* ECF No. 12. The Amended Complaint asserts six theories of recovery, all under Minnesota law. Counts I and II of the Amended Complaint assert the same UCC claims asserted in Counts I and II of the original Complaint. Am. Compl. ¶¶ 147–64. The Amended Complaint includes a new claim, in Count III, alleging that Defendants violated the UCC by failing to provide Dahir and putative class members with a reasonably detailed accounting in response to their requests. *Id.* ¶¶ 165–71. Count IV of the Amended Complaint includes the same UCC claim asserted in Count IV of the original Complaint. *Id.* ¶¶ 172–76. In Count V, Dahir asserts a new claim under the Minnesota Consumer Fraud Act, alleging essentially that the $2,000 fee charged by Defendants and perhaps other practices or charged amounts were "misrepresentations and deceptive practices" prohibited by the Act. *Id.* ¶¶ 177–90. Finally, in Count VI, Dahir alleges essentially that Defendants'

acceleration of the balance of Dahir and would-be class members' loans violated the UCC because Defendants' disposition notices were defective.  *Id.* ¶¶ 191–204.  The Amended Complaint includes allegations that differ from the original Complaint concerning the remedies Dahir seeks for himself and the classes.  With respect to Counts I, II, IV, and VI, Dahir seeks "damage[s] in an amount to be determined at trial."  *Id.* ¶¶ 157, 164, 176, 204. (Unlike the original Complaint, the Amended Complaint includes no specific "in excess of $50,000" allegations.)  In Count III, alleging a claim for deficient accounting, Dahir alleges that he and the "Accounting Class are entitled to statutory damages of $500."  *Id.* ¶ 171. Finally, in Count V, alleging violations of the Minnesota Consumer Fraud Act, Dahir seeks damages, attorneys' fees and costs, and "any other equitable or injunctive relief the court may deem just and proper."  *Id.* ¶¶ 189–90.  Defendants responded to Dahir's Amended Complaint with a successive Rule 12(b)(6) motion.  ECF No. 19.

## II

### A

"CAFA gives federal courts jurisdiction over certain class actions, defined in [28 U.S.C.] § 1332(d)(1), if the class has more than 100 members, the parties are minimally diverse, and the amount in controversy exceeds $5 million." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 84–85 (2014) (citing 28 U.S.C. § 1332(d)(2), (5)(B)).  Dahir alleged facts in his original Complaint plausibly showing that the number of members of his putative class exceeds 100.  Compl. ¶¶ 92–95.  Defendants identify these allegations in their Notice of Removal as the basis for meeting CAFA's numerosity

requirement. Notice of Removal ¶ 9.[4] And there is minimal diversity. As noted, Dahir alleges that he is an Ohio citizen, Compl. ¶ 3, and that Cresco is incorporated under Minnesota law and maintains its principal place of business in Iowa, *id.* ¶ 4, and Defendants repeated these allegations in their Notice of Removal, Notice of Removal ¶ 8. The focus here is on the $5 million amount-in-controversy threshold. And with respect to this issue, several settled rules deserve mention up front.

(1) It doesn't matter that Dahir didn't timely object to removal or first raise the CAFA-jurisdiction question. A federal court has "an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006) (citation omitted); *see also Johnson v. Welsh Equip., Inc.*, 518 F. Supp. 2d 1080, 1085 (D. Minn. 2007) ("Lack of subject matter jurisdiction cannot be ignored by the court or waived by the parties. A question of subject-matter jurisdiction may be raised by the court *sua sponte* at any time.") (citations omitted).

(2) "To remove a case from state court to a federal court, a defendant must file in the federal forum a notice of removal 'containing a short and plain statement of the grounds for removal.'" *Dart*, 574 U.S. at 83 (quoting 28 U.S.C. § 1446(a)). In *Dart*, the Supreme Court interpreted § 1446(a)'s "short-and-plain-statement" requirement to mean that a removing defendant must include factual allegations plausibly showing that CAFA's jurisdictional amount-in-controversy element is met. *Id.* at 87–89.

---

[4] Defendants mistakenly cite ¶ 112 of the original Complaint as the source of these allegations. Notice of Removal ¶ 9.

(3) "If the plaintiff's complaint, filed in state court, demands monetary relief of a stated sum, that sum, if asserted in good faith, is 'deemed to be the amount in controversy.'" *Id.* at 84 (quoting § 1446(c)(2)).   In other words, if the plaintiff's state-court complaint includes a good-faith, explicit demand for monetary relief in an amount greater than $5 million, the removing defendant need only repeat that demand in its notice of removal to plausibly show that CAFA's amount-in-controversy requirement is satisfied.

(4) "When the plaintiff's complaint does not state the amount in controversy, the defendant's notice of removal may do so." *Id.*   In this situation, there are conceivably many ways a defendant might allege facts plausibly showing that the amount in controversy exceeds CAFA's $5 million threshold.   A defendant might, for example, extrapolate by inferring controverted amounts from the plaintiff's asserted claims and requested categories of damages.   *See, e.g.*, *Pirozzi v. Massage Envy Franchising, LLC*, 938 F.3d 981, 982–83 (8th Cir. 2019).   A defendant might include factual allegations beyond those in the complaint.   *See, e.g.*, *Salter v. Quality Carriers, Inc.*, 974 F.3d 959, 961–62 (9th Cir. 2020).   Or a defendant might identify damages categories that, though not mentioned in the complaint, a plaintiff might plausibly recover.   *See, e.g.*, *Back Drs. Ltd. v. Metro. Prop. & Cas. Co.*, 637 F.3d 827, 831 (7th Cir. 2011).   To repeat, regardless of what approach a defendant takes, the defendant's notice of removal need only show it is plausible the amount in controversy exceeds $5 million.

(5) Regardless of how a notice of removal is designed to accomplish this task, determining whether a case meets CAFA's $5 million threshold is not intended to be difficult.   "[T]he claims of the individual class members shall be aggregated to determine

whether the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs." 28 U.S.C. § 1332(d)(6). CAFA "tells the District Court to . . . add[ ]up the value of the claim of each person who falls within the definition of [the] proposed class and determine whether the resulting sum exceeds $5 million." *Standard Fire Ins. Co. v. Knowles*, 568 U.S. 588, 592 (2013); *Faltermeier v. FCA US LLC*, 899 F.3d 617, 621 (8th Cir. 2018) ("[A] district court aggregates the claims of all named or unnamed persons who fall within the definition of the *proposed* or certified class.") (cleaned up).

(6) The "amount in controversy" is the amount a factfinder might award, not the amount a plaintiff probably will recover. In other words, a removing defendant under CAFA must show, not that the plaintiff and putative class *will* recover more than $5 million, but that factfinder *might* award more than that amount. *Pirozzi*, 938 F.3d at 984.

(7) Allegations plausibly showing the amount in controversy don't end the inquiry—they may be "contested by the plaintiff or questioned by the court." *Dart*, 574 U.S. at 87. "In such a case, both sides submit proof and the court decides, by a preponderance of the evidence, whether the amount-in-controversy requirement has been satisfied." *Id.* at 88. In this situation, the precise question is whether a preponderance of the evidence shows that it is legally impossible for the plaintiff to recover more than $5 million. *Pirozzi*, 938 F.3d at 984 ("When the notice of removal plausibly alleges that the class *might* recover [amounts] aggregating more than $5 million, 'then the case belongs in federal court unless it is *legally impossible* for the plaintiff to recover that much.'") (quoting *Raskas v. Johnson & Johnson*, 719 F.3d 884, 888 (8th Cir. 2013)). "Even if it is highly improbable that the Plaintiffs will recover the amounts Defendants have put in

controversy, this does not meet the legally impossible standard." *Id.* (quoting *Raskas*, 719 F.3d at 888).

(8) "The amount in controversy is measured at the time of removal." *Zellner-Dion v. Wilmington Fin., Inc.*, No. 10-cv-2587 (PJS/JSM), 2012 WL 2952251, at *1 (D. Minn. July 19, 2012) (citing *Hargis v. Access Cap. Funding, LLC*, 674 F.3d 783, 789 (8th Cir. 2012). Events after removal do not affect jurisdiction. *St. Paul Mercury Indemnity Co. v. Red Cab Co.*, 303 U.S. 283, 292 (1938).

(9) Though some cases apply a presumption against removal or favoring remand, *see, e.g.*, *In re Prempro Prods. Liab. Litig.*, 591 F.3d 613, 620 (8th Cir. 2010), "no antiremoval presumption attends cases invoking CAFA, which Congress enacted to facilitate adjudication of certain class actions in federal court." *Dart*, 574 U.S. at 89; *see Pirozzi*, 938 F.3d at 983 ("'A primary purpose in enacting CAFA was to open the federal courts to corporate defendants out of concern that the national economy risked damage from a proliferation of meritless class action suits.'") (quoting *Bell v. Hershey Co.*, 557 F.3d 953, 957 (8th Cir. 2009)).

B

Defendants' Notice of Removal, supplemented by Defendants' post-hearing submissions, does not allege facts plausibly showing that Dahir's claims meet CAFA's $5 million amount-in-controversy threshold.

Defendants allege facts regarding the amount in controversy in essentially three paragraphs of the Notice. *See* Notice of Removal ¶¶ 13–15. The facts Defendants allege come only from Dahir's original Complaint. In other words, this is not a case where a

removing defendant has exercised its right to present its own estimate of the stakes. *See Back Drs.*, 637 F.3d at 831 ("When a plaintiff does not tie its own hands, the defendant is entitled to present a good-faith estimate of the stakes.").

Several allegations in these paragraphs do not contribute at all to showing the amount in controversy. Defendants begin by describing the down-payment amount Plaintiff was obligated to make and the aggregate amount of the monthly installment payments he was required to make through the life of the lease. Notice of Removal ¶ 13. These amounts do not help to show the amount in controversy because these amounts are not in controversy—*i.e.*, nothing in Dahir's original Complaint suggests either that he seeks these amounts (on behalf of himself or any class member) or tethers a damages request to these sums. Defendants then describe what Dahir alleges is the post-default process Defendants follow, *id.*, but Dahir's account of this process doesn't plausibly show an amount in controversy. Neither Defendants in their Notice of Removal nor Dahir in his Complaint explain how a description of the process plausibly shows a controverted sum. Defendants point out correctly that Dahir alleges that "Defendants wrongfully retained proceeds from sale of class members' trucks," *id.* (quoting Compl. ¶ 96), but there are no allegations describing what these amounts might be, either with respect to Dahir (who does not allege that his truck was sold) or any would-be class member. The bottom line is that connecting these allegations to any damages amount would require speculation. *Cf. Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (noting that, to be plausible, a fact allegation must "raise a right to relief above the speculative level").

13

The Notice of Removal gets closer with its allegations identifying dollar amounts, but these allegations, whether considered separately or together, still fall short of plausibly showing that the amount in controversy here exceeds CAFA's $5 million threshold.

Defendants point out that Dahir alleges the $2,000 fee Defendants charged him was wrongful.  Notice of Removal ¶ 13.  Considered alone, this allegation does not show that the amount in controversy exceeds $5 million.  For that to work, the putative class would require something like 2,500 members, but Dahir's numerosity allegations don't permit one to plausibly reach the conclusion that the relevant class approaches that number.  *See* Compl. ¶¶ 92–95 (alleging generally that Defendants have signed over 6,473 titles to truck drivers and that the estimated number of class members is in excess of 100 truck drivers); *Knowles*, 568 U.S. at 592.

Defendants' next allegation would do the job if it were a fair characterization of Dahir's Complaint, but it's not.  Specifically, Defendants assert: "Plaintiff alleges, and has separately demanded, in excess of $50,000 in damages *for his individual claims*."  Notice of Removal ¶ 13 (emphasis added).  The sole source cited for this assertion in Defendants' Notice of Removal is Dahir's original Complaint.  *Id.*  Of course, if Dahir "separately demanded" greater than this amount, it might seem plausible to infer that each of the more than 100 potential class members may recover damages in excess of this amount, and that in turn would show the amount in controversy exceeds $5 million ($50,000 x 100 = $5 million).

The problem is that Dahir's Complaint cannot reasonably be understood to assert a greater-than-$50,000 *individual* damages claim—on his behalf or anyone else's.  As noted,

each Count in Dahir's original Complaint concludes with the following damages allegation: "*Plaintiff and the Classes* have suffered damages in an amount to be proved at trial but reasonably believed to be in excess of $50,000." Compl. ¶¶ 120, 126, 132, 138 (emphasis added). The phrase "Plaintiff and the Classes" cannot reasonably be understood to assert an individual claim on Dahir's behalf "in excess of $50,000." That doesn't work grammatically. "Plaintiff and the Classes" pretty clearly refers to Dahir and the three classes he alleges in the aggregate, not to Dahir alone and the classes separately or to Dahir alone and potential class members individually. Had Dahir intended to allege greater-than-$50,000 individual damages claims, the allegation almost certainly would have been worded differently, perhaps to refer to "Plaintiff and each Class member," or something similar.[5]

Understood this way, the most that may plausibly be inferred is that Dahir asserts an aggregate damages claim "in excess of $50,000" for each of the original Complaint's four counts, or a total amount in controversy "in excess of" $200,000. Defendants do not include an amount for attorneys' fees and costs in their Notice of Removal. Regardless, adding even 40% to that $200,000 figure—or $80,000—doesn't bring the amount close to

---

[5]     Defendants argue that, if Dahir sought less than $50,000 in damages, the Minnesota Rules of Civil Procedure required him to allege the amount specifically. Defs.' Suppl. Mem. [ECF No. 34] at 4. Because Dahir didn't do that, Defendants argue, his Complaint must be understood to assert greater-than-$50,000 individual claims on behalf of Dahir and each potential class member. *Id.* at 4–5. Assuming Defendants' take on Minnesota law as it might apply here is correct, the better understanding—based on the Complaint's allegations regarding the amount in controversy—is that Dahir did not comply with it.

CAFA's $5 million threshold.  Defendants cite no other material from the Complaint that might support the conclusion that Dahir asserts a $50,000 individual damages claim.

After the hearing on Defendants' Rule 12(b)(6) motion, the Parties were invited to submit additional briefing and evidence regarding the amount in controversy.  In their post-hearing submission, Defendants argue that a $60,000 pre-removal settlement demand (not cited or referred to in the Notice of Removal) shows that Dahir's individual claim in fact exceeds $50,000.  *See generally* Defs.' Suppl. Mem. [ECF No. 34].  Combined with the Complaint's allegations that Dahir's claim is typical of the more than 100 class members, Defendants argue that the $60,000 demand establishes that the aggregate amount in controversy exceeds $5 million.  Though this seems like a closer call, I conclude that the $60,000 demand doesn't lend plausibility to Defendants' allegation that Dahir's individual claim exceeds $50,000 or plausibly show that the amount in controversy exceeds $5 million.[6]

Dahir's counsel communicated the demand in an email dated July 21, 2021, five days before Defendants removed the case.  *See* ECF No. 35-1, Ex. 1.  Counsel presented the $60,000 demand on behalf of Dahir individually accompanied by a draft settlement agreement.  *Id.* at 2–4.  The draft agreement included a mutual release, addressed several

---

[6]   It seems reasonable to consider the demand.  Though the demand is not mentioned in the Notice of Removal, "most cases indicate that defendants may amend the notice . . . to set out more specifically the grounds for removal that already have been stated in the original notice."  14C Charles Alan Wright, Arthur R. Miller, Edward H. Cooper, Joan E. Steinman, and Mary Kay Kane, *Federal Practice and Procedure: Civil* § 3733 at 709 (4th ed. 2018).  It is true that Defendants have not sought leave to amend the Notice to mention the demand, but it makes better sense here to understand their submission of the demand as seeking that relief.  And Dahir hasn't objected to the demand's consideration.

other issues, and included a term acknowledging that "this settlement does not release the putative class members' claims." *Id.* at 4.

There doesn't seem to be binding Supreme Court or Eighth Circuit precedent governing a settlement demand's particular effect on the amount-in-controversy question, but many other courts have addressed the situation, and the cases reflect a consensus, common-sense approach. A settlement demand is relevant—but not determinative— evidence of the amount in controversy. *E.g.*, *Shupe v. Asplundh Tree Expert Co.*, 566 Fed. App'x 476, 480–81 (6th Cir. 2014) ("A settlement demand letter is *some* evidence regarding the amount in controversy.") (cleaned up); *Rising-Moore v. Red Roof Inns, Inc.*, 435 F.3d 813, 816–17 (7th Cir. 2006) (finding post-removal settlement demand "implies that the stakes at trial comfortably exceed the [jurisdictional] minimum"); *Cohn v. Petsmart, Inc.*, 281 F.3d 837, 840 (9th Cir. 2002) ("A settlement letter is relevant evidence of the amount in controversy if it appears to reflect a reasonable estimate of the plaintiff's claim.").

A settlement demand's precise relevance depends on the case's facts. Some courts have found that a settlement demand below the jurisdictional minimum shows the absence of jurisdiction. *E.g.*, *Tate v. Charter Commc'ns LLC*, No. 4:19-CV-2482 CAS, 2019 WL 5727384, at *1, 3 (E.D. Mo. Nov. 5, 2019). Other courts have found that a settlement demand above the jurisdictional minimum shows the presence of jurisdiction. *E.g.*, *Ereth v. GMRI, Inc.*, No. 17-0694-CV-W-FJG, 2017 WL 6316645, at *1, 2 (W.D. Mo. Dec. 11, 2017). Some courts have concluded that settlement offers just under the jurisdictional threshold may show that the amount in controversy exceeds the threshold "because litigants

often settle claims for less than the amount in controversy." *Shupe*, 566 Fed. App'x at 481 (quoting *Hollon v. Consumer Plumbing Recovery Ctr.*, 417 F. Supp. 2d 849, 854 (E.D. Ky. 2006)). Still other courts have found that settlement demands above the statutory threshold do not show the presence of jurisdiction because the demands were unreasonable, unsupported, or perhaps reflected mere settlement posturing. *E.g.*, *Nat'l Consumers League v. Flowers Bakeries, LLC*, 36 F. Supp. 3d 26, 33–34 (D.D.C. 2014); *Laducer v. Dish Network Serv., L.L.C.*, 691 F. Supp. 2d 1042, 1045–46 (D.N.D. 2010); *Ahmed v. GCA Prod. Servs., Inc.*, 249 F.R.D. 322, 324 (D. Minn. 2008); *Wang v. Pac. Cycle, Inc.*, 530 F. Supp. 2d 1048, 1051–53 (S.D. Iowa 2008); *Billingsley v. McGriff Transp., Inc.*, No. 05-4397-CV-C-NKL, 2006 WL 51188, at *1–3 (W.D. Mo. Jan. 10, 2006).

Here, the better conclusion is that Dahir's $60,000 demand falls in that category of settlement communications that do not plausibly show an amount in controversy. The demand is accompanied by no explanation. In other words, if the demand had some rational connection to Dahir's individual claims, his counsel didn't explain it. Though they might have, Defendants have furnished no explanation, either. Without any explanation, one is left to speculate about what might lie beneath the demand. Possibilities abound. Was Dahir's counsel, for example, leveraging the class-action threat or Dahir's status as a would-be class representative to seek a settlement greater—perhaps considerably greater— than Dahir's individual claim? Was the demand, like many, inflated to preserve Dahir and his counsel's bargaining position in the long run? Did the demand include damages elements unique to Dahir that might not be shared by potential class members? And, without knowing more, saying that the demand is representative of amounts that might be

recovered by absent class members is just a guess.  It is true that the demand isn't far off the $50,000 amount the Complaint identifies as in controversy with respect to "Plaintiff and the Classes," but as discussed earlier, understanding this phrase to describe Dahir and each potential class member's *individual* claims is not plausible.  The demand doesn't change that.  For this reason, unlike in *Rising-Moore*, the demand "is [not] close in spirit to the *ad damnum* in [the] complaint."  435 F.3d at 816.  All things considered, then, I conclude that the demand, while worthy of consideration, doesn't plausibly show either that Dahir's individual claim exceeds $50,000 or that the aggregate amount in controversy exceeds $5 million.[7]

Defendants' final amount-in-controversy allegation is that a "plaintiff in another pending action filed against Defendants who has alleged similar facts and claims falling within the definition of Plaintiff's putative classes is seeking 'damages in an amount exceeding $50,000.'"  Notice of Removal ¶ 14 (citing *Mohamed Abdirizak v. Cresco Capital, Inc. and Lone Mountain Truck Leasing, Inc.*, No. 62-cv-20-3112, Compl. 27 ¶ 1).  And Defendants included with their supplemental filing a copy of this complaint.  ECF No. 35-1, Ex. 2.

---

[7]     Some cases cited above may be understood to reject the relevance of an above-the-jurisdictional-threshold settlement demand because the plaintiff could not possibly recover the settlement demand's amount at trial.  *See, e.g.*, *Nat'l Consumers League*, 36 F. Supp. 3d at 34; *Laducer*, 691 F. Supp. 2d at 1045–46.  To be clear, I do not reach that conclusion here.  That would seem to require a determination that it is "legally impossible" for Dahir to recover more than $5 million.  *Pirozzi*, 938 F.3d at 984.  Because I find that the Notice of Removal as supplemented does not allege facts plausibly showing an amount in controversy above $5 million, I do not reach that "legal impossibility" question.  *Id.*

Begin by considering just the allegation (as it appears in the Notice of Removal) that a "plaintiff in another pending action filed against Defendants who has alleged similar facts and claims falling within the definition of Plaintiff's putative classes is seeking 'damages in an amount exceeding $50,000.'" This allegation doesn't satisfy Defendants' burden. Another plaintiff—even one who might fall within one or more of Dahir's class definitions—cannot through damages allegations in his separate case trump Dahir's damages allegations here. Accepting that proposition would appear to violate the rule that a plaintiff controls his or her own complaint. *See Bell*, 557 F.3d at 956 ("The enactment of CAFA did not alter the proposition that the plaintiff is the master of the complaint."). Defendants cite no authority supporting the legal proposition that a plaintiff's damages allegations in a separate state-court case inform the amount in controversy in a removed case. If that were possible, it would seem necessary to know enough to plausibly conclude that the separate plaintiff's situation is like Dahir's in material respects or perhaps representative of the damages allegedly sustained by potential class members. The Notice of Removal here includes no such allegations.

Reviewing the other suit's complaint doesn't change things because that complaint includes allegations and claims that seem absent, or at least materially different from, Dahir's original Complaint in this case. With respect to its factual basis, the *Abdirizak* complaint includes allegations of a bait-and-switch, ECF No. 35-1, Ex. 2 ¶¶ 3–4, 33–38, 42–43, threatening and harassing telephone calls, *id.* ¶¶ 59, 72–75, 79, the existence and breach of a settlement agreement, *id.* ¶¶ 85–103, and the "theft" of the plaintiff's truck, *id.* ¶¶ 104–14, allegations not presented here. The *Abdirizak* complaint includes different

claims, too: for false statements in advertisement under Minn. Stat. § 325F.67; for violation of the Minnesota Consumer Fraud Act, Minn. Stat. § 325F.69; under an Iowa statute, Iowa Code § 706A.2, that creates civil liability "for a person acting with knowledge of the financial goals and criminal objectives of a criminal network to knowingly facilitate criminal objectives of the network"; for common law fraud, breach of contract, unjust enrichment, and conversion; for civil theft under Minn. Stat. § 604.14, subd. 1; and for receiving stolen property under Minn. Stat. § 609.53, subd. 4. *See* ECF No. 35-1, Ex. 2 ¶¶ 115–87. Not one of these claims appears in Dahir's original Complaint. There, Dahir asserted four claims, all under Minnesota's version of the UCC.[8] It is no surprise, then, that the *Abdirizak* complaint seeks compensatory damages for just Abdirizak "in an amount exceeding $50,000," along with categories of substantial damages not sought here, including treble damages under Iowa Code § 706A.2 and Minn. Stat. § 609.53, and punitive damages under Minn. Stat. § 604.14, subd. 1. The bottom line is that going past the Notice of Removal's allegation and examining the *Abdirizak* complaint shows that the case—from that plaintiff's alleged circumstances to the requested damages—is so different that it cannot inform the amount-in-controversy question here or plausibly show that the amount in controversy here exceeds CAFA's $5 million threshold.

---

[8]     It is true that Dahir's Amended Complaint includes a claim under the Minnesota Consumer Fraud Act, but that doesn't matter. The Amended Complaint is one of those post-removal events that do not affect jurisdiction. *Red Cab*, 303 U.S. at 292. Regardless, this is the only claim overlapping between *Abdirizak* and Dahir's Amended Complaint.

\*

To summarize, Defendants' Notice of Removal does not include "a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart*, 574 U.S. at 89.  The Notice's allegation that Dahir asserts a greater-than-$50,000 individual claim misconstrues Dahir's damages allegations.  Dahir's original Complaint asserts an aggregate $50,000 damages claim per count on behalf of Dahir and the would-be classes. Dahir's $60,000 settlement demand doesn't plausibly support the allegation that Dahir asserts a greater-than-$50,000 individual damages claim because the demand lacks any explanation, and its amount could be driven by any number of factors unconnected to the amount in controversy.  If that weren't so, it requires speculation to conclude that the demand shows the amount in controversy generated by potential class members' claims. Finally, the fact that the plaintiff in *Abdirizak* seeks damages greater than $50,000 doesn't plausibly show that amount in controversy here because the two suits' factual allegations, theories of recovery, and requested damages are materially different.  The absence of allegations in Defendants' Notice of Removal (as supplemented by the settlement demand and *Abdirizak* complaint) plausibly showing that the amount in controversy exceeds $5 million warrants remanding this case to Hennepin County District Court.[9]

---

[9]     Payment of Dahir's attorney fees and costs will not be ordered because Defendants had an objectively reasonable basis for removal.  *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 136 (2005).

## ORDER

Accordingly, based on all the files, records, and proceedings herein, **IT IS ORDERED THAT**:

1.    The case shall be remanded to Minnesota District Court, Fourth Judicial District (Hennepin County) pursuant to 28 U.S.C. § 1447(c).

2.    Defendants' Motion to Dismiss [ECF No. 19] is **DENIED AS MOOT**.

Dated:  May 31, 2022          s/ Eric C. Tostrud
                                       Eric C. Tostrud
                                       United States District Court